No. 44,911

Ival L. Trimble, Administrator of the Estates of James T. Griffin, Deceased, and Inez Irene Griffin, Deceased, *Appellant, v.* The Coleman Company, Inc., a Corporation, and Dean Gilley, Sr., d/b/a Gilley's Firestone Store, *Appellees.*

(437 P. 2d 219)

Opinion filed January 27, 1968.

*Brock R. Snyder,* of Topeka, argued the cause and *O. B. Eidson, Philip H. Lewis, James W. Porter, Charles S. Fisher, Jr., William G. Haynes, Charles N. Henson, Peter F. Caldwell, Roscoe E. Long* and *R. Austin Nothern,* all of Topeka, were with him on the brief for the appellant.

*Robert L. Howard,* of Wichita, argued the cause and *George B. Powers,*

*John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Charles J. Woodin, Mikel L. Stout, Benjamin C. Langel, Phillip S. Frick, Jerry G. Elliott, John E. Foulston* and *Stanley G. Andeel,* all of Wichita, were with him on the brief for the appellee The Coleman Company, Inc.

*Donald R. Newkirk,* of Wichita, argued the cause and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson, David W. Buxton, John T. Conlee, John Prather, Richard I. Stephenson* and *Douglas D. Johnson,* all of Wichita, were with him on the brief for the appellee Dean Gilley, Sr.

The opinion of the court was delivered by

FROMME, J.: The action from which this appeal stems was brought by the administrator of the estates of James T. Griffin and Inez Irene Griffin against The Coleman Company, Inc. and Dean Gilley, Sr. to recover damages for the wrongful deaths of Mr. and Mrs. Griffin. A gas heating stove was purchased by them and was installed in the Griffin home shortly before their deaths. The apparent cause of their deaths was carbon monoxide poisoning.

The action is based upon specific charges of negligence made against The Coleman Company, Inc., manufacturers of the heating stove, and against Dean Gilley, Sr., who sold the stove to the Griffins and was in charge of its installation. The trial court sustained a motion for an involuntary dismissal as to The Coleman Company, Inc. at the close of plaintiff's evidence. The jury returned a verdict in favor of the defendant Dean Gilley, Sr. Plaintiff has appealed from the order of dismissal as to defendant Coleman and from the verdict in favor of the defendant Gilley.

The statement of points upon which error is predicated is concerned mainly with questions as to the exclusion and the sufficiency of the evidence offered. The facts as developed by the evidence are necessary to properly understand the questions raised on appeal. The jury resolved conflicting evidence in favor of the defendant Dean Gilley, Sr. so we set forth the facts favorable to this defendant.

Mr. and Mrs. Griffin lived in Delphos, Kansas. On January 14, 1963, they purchased a gas heating stove in Minneapolis, Kansas, from Dean Gilley, Sr. who owned and operated Gilley's Firestone Store. It was a new stove manufactured by The Coleman Company, Inc. The Griffins wanted the stove delivered that day in Delphos. It was orally understood that Mr. Gilley and his son would load the stove that afternoon. Mr. Gilley would drive to

the home of Mr. and Mrs. Griffin in Delphos and then Mr. Gilley and Mr. Griffin would unload and install the heating stove.

Mr. Gilley arrived with the new stove around four o'clock that afternoon and Mr. Griffin and Mr. Gilley unloaded and installed it in place of an older gas stove. As sometimes happens the husband and wife did not entirely agree as to the exact positioning of the new stove but as usually happens the stove was placed diagonally in the corner as suggested by the wife. Mr. Gilley worked at uncoupling and coupling the natural gas line servicing the stove. Mr. Griffin disassembled the stovepipe which vented the old heater. Both Mr. Griffin and Mr. Gilley cooperated in reassembling and installing the stovepipe to vent the new stove. After the installation was completed Mr. Gilley adjusted the burner to the proper blue flame. He remained there for about an hour to see that the stove was operating properly. He testified he checked the stovepipe to see if it was solidly attached to the stove and the stove was properly installed and properly operating when he left at six o'clock.

At approximately 3:00 a. m. Dr. Wedel made a house call to the Griffin residence. Mrs. Griffin was in bed ill with nausea, vomiting and aching. The doctor diagnosed and treated her illness as influenza. He did not smell anything unusual. He glanced at the heating stove and it appeared to be working and he did not notice anything unusual about it. At that time Mr. Griffin was in the front room fully clothed and in a jovial mood. The nurse who was at the house with the doctor noticed a "heavy smell" in the house and Mrs. Griffin told her there was quite a smoke in the house after the stove had been started.

Later that morning both Mr. and Mrs. Griffin were found dead in their home. Mr. Griffin was fully clothed in the center of the living room in a kneeling position. Mrs. Griffin had died while in bed. When the sheriff arrived the Coleman heating stove was emitting a loud noise, the flame was rolling with an orange color, the stovepipe was loose from the stove vent and hung about three inches back and to one side of the vent. The air inside the house was heavy, wet and hard to breathe. A flashlight was lying on a pillar near the heating stove. In the kitchen there was a gas cooking stove with two of the burners removed and lying on top. The burner controls were not turned on. The pilot light was out. A screwdriver was lying on a table nearby.

After the gas service to the house was turned off and the house

aired, a local service man made some change in the stovepipe by removing an extra elbow and attaching the joint with metal screws. He made some slight adjustment to the air mixture and the stove was lighted. It operated satisfactorily for several weeks thereafter.

A postmortem examination was made on the bodies of Mr. and Mrs. Griffin. Their death certificates recorded the cause of each death as carbon monoxide poisoning.

Other facts developed by the evidence will be mentioned as they become necessary to a proper understanding of the specific questions raised.

The first point of error urged by plaintiff-appellant is directed toward exclusion of testimony claimed by appellant to establish a usual business practice. Both Dean Gilley, Sr. and his son were asked if it was their practice when they sold appliances to install them. An objection was sustained to this question in each instance. In one instance the objection was made on the ground it was an attempt to vary the terms of the contract and in the other instance the objection was made that it was irrelevant and immaterial.

Both Dean Gilley, Sr. and his son testified that in closing this particular sale it was agreed that Dean Gilley, Sr. and Mr. Griffin would install this stove. Since the evidence established the agreement and since installation of the stove was made according to this agreement we do not believe error can be predicated on refusal to permit answers to these two questions seeking to establish a usual business practice somewhat at variance with the actual agreement. Plaintiff did not plead the custom or usual business practice. He alleged the stove was installed by contract and agreement. Evidence of custom, usage and usual business practice should not be received to vary or contradict the terms of an agreement. It may not be received to make a contract where the parties have made none. (25 C. J. S., Customs & Usages § 20; 21 Am. Jur. 2d, Customs and Usages § 23; *Atkinson v. Kirkpatrick*, 90 Kan. 515, 135 Pac. 579; *Peoples Ice & Fuel Co. v. Dickey Oil Co.*, 145 Kan. 351, 65 P. 2d 319; *Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 309 P. 2d 692.) It was not error to exclude answers respecting usual business practice under the circumstances.

Appellant urges error because the trial court excluded evidence of the individual practice of the witness Hawkins and of the witness Klein to secure all stovepipe joints by the use of metal screws.

In each instance the witness was asked regarding his own individual practice.

In 32 C. J. S., Evidence, § 546 (76), p. 298, the following appears:

"A custom or usage of trade must be established as a matter of fact and not of opinion; hence witnesses must testify to its existence as a fact. It must be proved by instances and not by opinion; but the proof must be of a general custom and not of an individual instance, and the witness must not state a mere conclusion with respect to acts in conformity with a custom."

Practice, habit or custom of a party charged with misconduct may be admitted under certain circumstances. (See K. S. A. 60-449; K. S. A. 60-450.) However, the code does not permit the individual practices of two third persons to be used as a standard of general practice or usage. Custom and general practice must be established by the opinion of a properly qualified expert who knows and testifies to the general practice in his field. (*Grohusky v. Atlas Assurance Co.,* 195 Kan. 626, 408 P. 2d 697.) The admission or exclusion of such testimony is largely within the discretion of the trial judge who makes requisite findings. (K. S. A. 60-456; *Grohusky v. Atlas Assurance Co.,* supra.) In the present case the testimony sought by plaintiff was excluded and rightly so.

Appellant next contends the court erred in refusing to admit the testimony of Dr. Fred Kurata. His deposition, as an expert in the area of thermodynamic and physical properties of natural gas, was taken prior to trial. No question is raised as to his general expertise in his field.

Dr. Kurata testified that he did not examine this particular gas heating stove either before or after the accident. He examined a photograph of the stove and a pamphlet of general operating instructions on the day his deposition was taken and stated he was familiar with this and similar types of stoves.

He further testified a gas heating stove if properly manufactured, assembled, installed and adjusted should not generate carbon monoxide gas. In response to hypothetical questions he testified as follows:

"Q. Now, sir, assume that the stove in question did indeed produce carbon monoxide gas, and assume further that it was carefully, according to the usual and proper methods, carefully installed and adjusted, do you have an opinion as to whether or not, correction, do you have an opinion as to what would be the cause of that stove producing carbon monoxide gas?

"A. Yes, sir.

"Q. What is your opinion, sir?

"A. In that case the manufacture was defective somewhere.

"Q. Now, let's reverse the situation; let's assume the stove was properly designed, properly manufactured, and properly assembled, and yet when lit it still produced carbon monoxide gas, do you have an opinion under those circumstances as to what would cause that stove to produce carbon monoxide gas?

"A. Yes, sir.

"Q. What is your opinion?

"A. In that case the adjustment was improper."

On cross-examination he testified that he was not saying this particular stove was defectively manufactured or defectively designed or improperly installed. His testimony did not relate to this particular stove and was only in answer to the hypothetical questions.

At the trial the Kurata deposition was rejected upon objection by defendants that no adequate foundation had been laid for such testimony since the witness had no personal knowledge of facts concerning the particular stove, that the opinions given were based upon speculation and conjecture, that the opinions given were not predicated upon facts in evidence at the trial and that the opinions failed to interpret any evidence which would assist the jury in arriving at an ultimate decision in the case.

Appellant contends the defendants waived their objections by not making them when the deposition was taken and even if not waived the testimony was revelant and should have been admitted. In either case prejudicial error is claimed. We will examine the question of waiver first.

K. S. A. 60-232 (c) in pertinent part provides:

"(c) (1) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

"(2) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless reasonable objection thereto is made at the taking of the deposition." . . .

K. S. A. 60-226 (e) provides:

"Subject to the provisions of sections 60-228 (b) and 60-232 (c), objection may be made at the trial of hearing to receiving any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying."

It would appear from the plain wording of the statute that the objection was not waived unless the ground of the objection is one which might have been obviated or removed if presented when the deposition was being taken.

The federal courts have construed a similar federal rule. In *Houser v. Snap-On-Tools Corporation*, 202 F. Supp. 181 (D. Md. 1962) the objection was that the questions in the deposition were leading and improperly phrased. The objection was not based upon inadmissibility of the evidence itself. The court in that case ruled such objections to the form of the question were waived unless made during the taking of the deposition. The grounds for the objection could have been removed by rewording the question if raised during the taking of the deposition.

In *Johnson v. Nationwide Mutual Insurance Company*, 276 F. 2d 574 (4th cir. 1960) the objection was based upon the hearsay rule. No objection was made during the taking of the deposition. The court in such case held the objection was to admissibility of the evidence. The ground of the objection could not have been obviated or removed at the time of the taking of the deposition and the objection was not waived. (See also 2 Vernon's K. S. A. Code of Civ. Proc. § 60-232.3.)

In the present case we do not believe the grounds of the objection were those which might have been obviated or removed if the objection had been made when the deposition was taken. The witness had not examined or tested the particular stove and any objection to the foundation for the hypothetical question could only be determined from evidence later introduced at the trial. The objection to the testimony was not waived by failure to make it at the time the deposition was taken.

As to admissibility of opinion or expert testimony it was said in *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, 431 P. 2d 518:

"The statute [K. S. A. 60-456 (b)] requires that the expert witness base his testimony upon facts personally perceived by or known to him or made known to him at the hearing. 'Perceived' means knowledge acquired through one's own senses. (K. S. A. 60-459 [c]), and 'made known' refers to facts put in evidence. The rule must be considered in connection with K. S. A. 60-458 by which it is unnecessary for the witness to specify the data before expressing his opinion." (p. 546)

In *Howard v. Stoughton*, 199 Kan. 787, 790, 433 P. 2d 567, the court set out further rules as to expert testimony as follows:

"The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. (*Taylor v. Maxwell,* 197 Kan. 509, 419 P. 2d 822.) There is no requirement that questions be hypothetical in form when an expert witness is presented the facts in some other acceptable manner. (K. S. A. 60-458; Gard, Kansas Code of Civil Procedure, § 458.) He may render an opinion based on facts or data within his personal knowledge or observation, or made known to him at the hearing. (K. S. A. 60-456 [b]; *Van Welden v. Ramsay's Inc.,* 199 Kan. 417, 430 P. 2d 298.) . . ."

The following quotation from Jones On Evidence appears pertinent:

". . . In short, there must be in the evidence a sufficient fact predicate to support a hypothetical question and the answer of the expert thereto.

"It is error to allow an expert to answer a hypothetical question which excludes from his consideration facts which have already been proved by the testimony upon which the question is based, a consideration of such facts being essential to the formation of an intelligent opinion concerning the matter. The court should reject questions which unfairly select part of the established facts or which omit material parts. A hypothetical question cannot be based upon testimony given by the witness himself, where it is merely assumed to be true." (2 Jones On Evidence, § 416, P. 783, [Fifth Edition])

The province of an expert witness is to aid the jury in the interpretation of technical facts or to assist in understanding the material in evidence. It is not his province to state simple conclusions based upon facts which could be, but which have not been, placed in evidence. (*Coca-Cola Co. v. Joseph C. Wirthman Drug Co.,* 48 F. 2d 743; 32 C. J. S. Evidence § 546 [64]; 58 Am. Jur., Witnesses § 854.)

This was an action for damages based upon specified acts of negligence. The plaintiff in the pretrial order identified specific acts of negligence as against The Coleman Company, Inc. and separate and distinct acts of negligence as against the defendant Gilley.

Under the facts placed in evidence these hypothetical questions are questionable in form and foundation. They appear objectionable because when asked in the alternative the answers would not aid a jury in interpreting technical facts or assist in understanding the material in evidence. The hypothesis upon which each question was presented was not sufficiently founded upon the facts in evidence. The trial court acted within its sound discretion in excluding Dr. Kurata's deposition and we find no error therein.

Appellant next urges it was error to exclude postmortem examination reports which indicated the decedents' blood samples con-

tained a heavy saturation of carbon monoxide. Without determining the question of whether the reports were admissible as official records or as business entries, we fail to see how prejudice could have resulted from their exclusion. The evidence was merely cumulative and the issue was uncontroverted. The attending physician who performed the postmortem examinations testified the deaths were caused by carbon monoxide poisoning and his opinion was based upon his examination and upon the content of carbon monoxide in the blood specimens. His testimony was uncontradicted. The death certificates were admitted without objection and they indicated the cause of both deaths was carbon monoxide poisoning.

There is no reversible error unless the appellant meets the burden of showing prejudice from the exclusion of cumulative evidence. (*Stump v. Flint*, 195 Kan. 2, 402 P. 2d 794; *Thompson v. Norman*, 198 Kan. 436, 424 P. 2d 593.) The evidence of this postmortem report was merely cumulative and does not add materially to the weight or clarity of that already given. No prejudicial error resulted.

This action was based upon specific acts of negligence set forth in the petition and enumerated in the pretrial order. On the second day of the trial plaintiff orally moved for permission to amend the pleadings to include the theory of *res ipsa loquitur*. At the close of all of the evidence the motion was renewed and it was further orally moved for permission to amend the pleadings to include the theory of breach of an implied warranty of fitness. These motions were denied and plaintiff-appellant urges error by reason thereof.

Our statute K. S. A. 60-215 provides after responsive pleading is served a party may amend his pleading only by leave of court or by written consent of the adverse party and directs that leave to amend shall be freely given when justice so requires.

In *Brown v. Hardin*, 197 Kan. 517, 419 P. 2d 912, this court said:

"The pretrial conference provided for by K. S. A. 60-216 has become an important part of our procedural process designed, among other things, to acquaint each party in advance of trial with the respective factual contentions of the parties upon matters in dispute, thus reducing the opportunity for maneuver and surprise at the trial, and enabling all parties to prepare in advance for trial. At pretrial conference the court may make any determination that will aid in the fair, orderly and efficient disposition of the action. . . ." (p. 519.)

In *Hoover Equipment Co. v. Smith,* 198 Kan. 127, 422 P. 2d 914, the court said:

"Plaintiff's application to amend is not permitted under the statute as a matter of course since the statute requires such amendment before a responsive pleading is served. The application to amend the petition was one which may be granted by leave of court or by written consent. Permission to amend was refused. A trial court is given wide latitude and discretion in permitting or refusing amendments of pleading in the interests of justice. In the absence of a clear abuse of discretion the order of the trial court should be approved. (Citations omitted.)" (p. 133)

The doctrine of *res ipsa loquitur* is a rule of evidence, rather than substantive law, and does not destroy the force of the rules that negligence is never presumed but must be proved and that the fact an injury occurs is not sufficient to establish liability (*Chandler v. Anchor Serum Co.* 198 Kan. 571, 426 P. 2d 82; *Blue Stem Feed Yards v. Craft,* 191 Kan. 605, 383 P. 2d 540.) Where there is another explanation in evidence for the accident other than negligence on the part of the defendant, the doctrine may not be used against defendant. (*Woosley v. Erickson,* 179 Kan. 794, 298 P. 2d 268.)

Regardless of the ground of liability asserted, before a plaintiff can recover damages from a manufacturer for breach of an implied warranty of fitness, he must show the product was defective. (*Jacobson v. Ford Motor Co.,* 199 Kan. 64, 427 P. 2d 621.) The defect in the product must be established as of the time it left the possession and control of the party sought to be held liable. (*Evangelist v. Bellern Research Corporation,* 199 Kan. 638, 433 P. 2d 380.)

We do not believe that either of these doctrines was applicable to the facts in evidence in this case. The trial court properly exercised its discretion in refusing to allow the plaintiff to amend his pleadings.

The appellant next contends there was no substantial evidence of contributory negligence on the part of James T. Griffin and the court erred in giving an instruction on contributory negligence.

It is presumed that a deceased person exercised due care for his own safety. However, such presumption is rebuttable and may be overcome by direct or circumstantial evidence. (*Long v. Foley,* 180 Kan. 83, 299 P. 2d 63; *Finch v. Phillips,* 183 Kan. 219, 326 P. 2d 763.)

The direct and circumstantial evidence in this case would support findings by a jury the stove was properly installed and ad-

justed when Dean Gilley, Sr. left the premises at 6:00 o'clock that evening. When the doctor came to the house at 3:00 o'clock the next morning Mr. Griffin was still up and fully clothed. The doctor glanced at the stove and noticed nothing out of the ordinary. When the bodies were discovered evidence indicated the stove appeared to have been moved out several inches from its original position. The stovepipe was hanging about three inches away from the stove. The stove was not operating properly, was making noise and was burning with a rolling orange flame. A flashlight was near the stove. A screwdriver was on a table and the burners from the kitchen stove had been removed and laid on top of it. Mr. Griffin was found fully clothed in a kneeling position in the center of the living room. The force and effect of this evidence was for the jury. We cannot say an instruction on contributory negligence was improper or prejudicial under these facts and circumstances.

The court did instruct that contributory negligence was not a defense to the claim of the estate of Inez Griffin and should not be considered as to that claim. The verdict was in favor of the defendant on both claims.

The trial court should instruct concerning contributory negligence when evidence is introduced tending to show such negligence. (*Jones v. Railway Co.*, 91 Kan. 282, 137 Pac. 796.) The issue of contributory negligence was properly submitted on the claim of the estate of James T. Griffin, deceased.

In support of a motion for a new trial based upon the ground of newly discovered evidence plaintiff submitted an affidavit from a lady who was visiting in the Griffin home while the stove was being installed. The witness deposed that Mr. Gilley was performing the actual installation and that Mr. Griffin was assisting, that Mr. Gilley gave Mr. Griffin directions as he assisted and that in her opinion the stove was too close to the wall in its final position.

The defendant Gilley testified he installed the stove and was assisted by Mr. Griffin. Therefore the testimony of the lady visitor would have been merely cumulative except for her conclusionary statement that the stove was positioned too close to the wall. The conclusionary statement was incompetent evidence.

It is well established that incompetent evidence even though newly discovered is not ground for granting a new trial. (*Smith v. Wichita Transportation Corp.*, 179 Kan. 8, 21, 293 P. 2d 242.) It is equally well established that a new trial will not be granted

on the ground of newly discovered evidence where the evidence is cumulative and could not change the final result. (*Stillie v. Stillie,* 119 Kan. 816, 244 Pac. 844.)

The evidence discovered and urged in support of the motion for new trial was not such as is contemplated in K. S. A. 60-259, *Fifth.*

After a careful examination of the record and of points raised on appeal we find no evidence that The Coleman Company, Inc. was negligent or that the stove was defective. The trial court properly ordered dismissal of the action as to The Coleman Company at the close of plaintiff's evidence. Judgment in favor of the defendant Dean Gilley, Sr. was properly entered upon the verdict of the jury.

The judgment is affirmed.